IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**UNITED STATES OF AMERICA**

v.                                                                           Criminal No. 5:09-0216

**RODNEY T. HOFFMAN**

## MEMORANDUM OPINION AND ORDER

On September 23, 2009, the United States filed a two-Count Indictment charging Defendant with knowingly storing and causing the storage of hazardous waste without a permit in violation of the Resource Conservation and Recovery Act, 42 U.S.C. § 6928(d)(2)(A). (Document No. 1.) The United States also filed a document indicating that Defendant was then in State custody at South Central Regional Jail on another conviction (Document No. 3.), and the Clerk issued a Warrant for Defendant's arrest (Document No. 4.). On September 24, 2009, the United States petitioned for the issuance of a Writ of Habeas Corpus *ad Prosequendum* for Defendant's appearance at an initial appearance/arraignment on November 3, 2009, indicating that Defendant was in State custody as "an unsentenced prisoner". (Document No. 5.) The United States also lodged a "Detainer Against Unsentenced Prisoner" with South Central Regional Jail, and the Jail received it on September 28, 2009.[1] The Court granted the United States' Petition for the issuance of a Writ of Habeas Corpus *ad*

---

[1] The "Detainer Against Unsentenced Prisoner" states as follows:

> Please accept this Detainer against the above-named subject who is an unsentenced prisoner currently in your custody. The United States District Court for the Southern District of West Virginia has issued an **arrest warrant** charging the subject with the commission of the following offense(s):
>
> Storage of hazardous waste without a permit
>
> Prior to the subject's release from your custody, please notify this office at

*Prosequendum* (Document No. 6.), and the Clerk issued the Writ (Document No. 7.). On October 30, 2009, the United States filed a Motion to Detain Defendant in Federal Custody based upon the Interstate Agreement on Detainers Act [IADA], 18 United States Code Appendix 2. (Document No. 10.) The United States explains that on October 2, 2009, Defendant was sentenced in the Kanawha County Circuit Court upon his conviction of State charges to a one to five year term of imprisonment in the State penitentiary and is currently in State custody at the Southern Regional Jail. (Id., ¶¶ 2 and 3.)[2] The United States did not lodge a "Detainer Against Sentenced Prisoner" after he was sentenced in State Court because those holding Defendant in State custody indicated that they intended to honor the Writ of Habeas Corpus *ad Prosequendum*. The United States asserts that the IADA applies because Defendant is serving a term of imprisonment in West Virginia as the Federal charges are pending against him. (Id., ¶ 4.) The United States maintains that the IADA provides that once Defendant is brought before the District Court upon the Federal charges, he must be held in Federal

---

    once so that we may assume custody if necessary. If the subject is transferred from your custody to another detention facility, we request that you forward our Detainer to said facility at the time of transfer and advise the office as soon as possible.

    The notice and speedy trial requirements of the Interstate Agreement on Detainers Act do **NOT** apply to this detainer because the subject is not currently serving a sentence of imprisonment at the time the Detainer is lodged. **IF THE SUBJECT IS SENTENCED WHILE THE DETAINER IS IN EFFECT, PLEASE NOTIFY THIS OFFICE AT ONCE.**

[2] While upon sentencing Defendant was committed to the custody of the West Virginia Division of Corrections which controls and operates the State's penitentiaries for the duration of his sentence, he nevertheless remains incarcerated in the Southern Regional Jail, a facility controlled and operated by the West Virginia Regional Jail and Correctional Facility Authority. The Division of Corrections designates sentenced persons committed to its custody to Regional Jails as the State penitentiary system has no room for them. *See State ex rel. Sams v. Commissioner, West Virginia Division of Corrections*, 218 W.Va. 572, 576 - 577, 625 S.E.2d 334, 338 - 339 (2005). Defendant should be regarded, therefore, as serving a State sentence though he is not in a State penitentiary.

custody until the Federal proceedings are concluded. If Defendant is returned to State custody prior to trial, the Federal charges against him must be dismissed. (Id., ¶ 6.) Alternatively, the United States explains, the IADA provides that Defendant may choose to return to State custody before the Federal proceedings are concluded. (Id.)

On November 3, 2009, the United States Marshals Service produced Defendant in Court for his initial appearance/arraignment pursuant to the Writ of Habeas Corpus *ad Prosequendum*, and the Court held Defendant's initial appearance/arraignment. The Court then announced that it would deny the United States' Motion to Detain Defendant in Federal Custody and allow the Offices of the United States Attorney and the United States Marshals Service to work out the custody issue as they had in other cases. The United States' attorney expressed concern that circumstances might develop which would require dismissal of the Indictment under the IADA. Defendant's counsel stated that Defendant did not object to the United States' Motion pointing out that the IADA provides that "[d]uring the continuance of temporary custody or while the prisoner is otherwise being made available for trial as required by this agreement, time being served on the sentence shall continue to run but good time shall be earned by the prisoner only if, and to the extent that, the law and practice of the jurisdiction which imposed the sentence may allow." 18 U.S.C. App. 2, Article V(f). Having this further discussion with counsel, the Court became concerned that the circumstances might generate some confusion in the future respecting Defendant's custodial status and deserved further attention. Defendant was remanded to and remains in the custody of the United States Marshals Service at the Southern Regional Jail. For the reasons stated below, the Court grants the United States' Motion to Detain Defendant in Federal Custody (Document No. 10.).

**DISCUSSION**

The fundamental considerations underlying the IADA are set forth at Article I as follows:

> The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.

The IADA establishes a "cooperative process" centered upon the lodging of detainers which "requires a State in which an individual is currently imprisoned to hold that individual . . . so that he may be tried by a different State for a different crime." Alabama v. Bozeman, 533 U.S. 146, 148, 121 S.Ct. 2079, 2082, 150 L.Ed.2d 188 (2001). The IADA designates the jurisdiction where the individual is imprisoned as the "sending State" and the jurisdiction in which charges are pending which are the bases for a detainer as the "receiving State." 18 U.S.C. App. 2, Art. II. In this case, West Virginia is the "sending State" and the United States is the "receiving State."[3] The *sine qua non* of the IADA is the lodging of a detainer against a person who is imprisoned and serving a sentence. A detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." Fex v. Michigan, 507 U.S. 43, 44, 113 S.Ct. 1085, 1087, 122 L.Ed.2d 406 (1993). Once lodged, a detainer may be acted upon in one of two ways: (1) the individual against whom a detainer is lodged may notify the agency of the "sending State" which holds him in custody or its representative that he requests final disposition upon the charges which

---

[3] The Agreement on Detainers as West Virginia has adopted it is at *W.Va. Code* §§ 62-14-1, *et seq*.

are the basis for the detainer, 18 U.S.C. App. 2, Art. III; and (2) an officer of the "receiving State" may "have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated[.]" 18 U.S.C. App. 2, Art. IV(a). The IADA contains an "anti-shuttling" provision at Article IV(e): "If trial is not had on an indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment, pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." Article V(e) provides that "[a]t the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending State." Article IX, § 9 sets forth special provisions when the United States is the receiving State:

> Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State –
>
> (1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice; and
>
> (2) it shall not be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the sending State pursuant to an order of the appropriate court issued after reasonable notice to the prisoner and an opportunity for a hearing.

The IADA makes no provision for a receiving State's lodging of a detainer against a person who is not actually serving a term of imprisonment in the sending State, but the United States is

currently utilizing the "Detainer Against Unsentenced Prisoner" Form under those circumstances. When a person is actually serving a sentence in the sending State, the United States utilizes a "Detainer Against Sentenced Prisoner" (USM-17) Form which conforms with the IADA. A "Detainer Against Unsentenced Prisoner" cannot trigger the IADA as the form correctly indicates as the IADA does not apply until "a person has entered upon a term of imprisonment in a penal or correctional institution of a party State . . .." 18 U.S.C. App. 2, Art. III(a). "[A] Writ of Habeas Corpus *ad Prosequendum* is not a detainer for purposes of the Agreement." United States v. Mauro, 436 U.S. 340, 361, 98 S.Ct. 1834, 1848, 56 L.Ed.2d 329 (1978). If the receiving State has lodged a "Detainer Against Sentenced Prisoner" in the sending State and requires the person's appearance at proceedings in the receiving State through the issuance of a Writ of Habeas Corpus *ad Prosequendum*, the IADA applies to require the receiving State to hold the person for trial. United States v. Mauro, 436 U.S. at 361 - 362, 98 S.Ct. at 1848. If the receiving State returns the person to the sending State prior to the trial upon the matters pending in the receiving State, the Court must dismiss the matters pending in the receiving State with prejudice unless the receiving State is the United States and then dismissal may be with or without prejudice based upon considerations set for at 18 U.S.C. App. 2, Art. IX § 9(1). A receiving State's lodging of a "Detainer Against Unsentenced Prisoner" which does not provide notice of the person's rights under the IADA when the person is actually serving a sentence in the sending State is a violation of the notice requirements of the IADA but cannot be a basis for dismissal of proceedings in the receiving State. United States v. Robinson, 455 F.3d 602, 606 (6th Cir. 2006); United States v. Lualemaga, 280 F.3d 1260, 1264 - 1265 (9th Cir. 2002), cert. denied, 536 U.S. 949, 122 S.Ct. 2641, 153 L.Ed.2d 820 (2002)("[D]ismissal of an indictment is not an available form of relief where the notice requirement

of the IAD is violated, even when that violation is attributable to the receiving State, here the United States."); United States v. Walker, 255 F.3d 540, 542 (8th Cir. 2002), cert. denied, 535 U.S. 1011, 122 S.Ct. 1591, 152 L.Ed.2d 508 (2002)(Dismissal of an indictment for violation of notice requirements is not authorized under the Speedy Trial Act or IADA.)

Until the Supreme Court issued its decision in Alabama v. Bozeman, Courts of Appeals generally took a "no harm, no foul" approach in considering issues arising under the IADA when detainers were lodged and persons were transferred back and forth between sending and receiving States. For example, in United States v. Boso, 862 F.2d 870, 1988 WL 124884 (C.A.4(W.Va.), Mr. Boso was transferred from the West Virginia Penitentiary into federal custody four times for arraignment, jury selection, entry of a guilty plea and sentencing for several hours each time. Two of his transfers occurred through Writs of Habeas Corpus *ad Prosequendum*. After he entered his guilty plea and before he was sentenced, Mr. Boso requested that the indictment against him be dismissed on grounds that a detainer had been lodged against him either actually or by operation of the documents which required his appearance in the District Court and he was transferred back to State custody before the federal proceedings were concluded in violation of the IADA. The District Court denied Mr. Boso's request, and the Fourth Circuit Court of Appeals affirmed finding that Mr. Boso "waived any objection to his transfers by virtue of his guilty plea." The Fourth Circuit noted that Mr. Boso "was not held in federal custody overnight during any of his transfers. His short spells in federal custody did not impede his rehabilitation or prevent his participation in prison programs. Therefore, even if there was a detainer, the purposes of the IAD were not violated, and Boso's conviction was proper. (Citation omitted.) The district court's denial of Boso's motion to dismiss was proper because the federal proceedings against him did not violate the IAD." The Fourth

Circuit stood with the majority of Courts which had considered the issue. See United States v. Ross, 243 F.3d 375, 379 (7th Cir. 2001), cert. denied, 534 U.S. 972, 122 S.Ct. 394, 151 L.Ed.2d 298 (2001), stating that "[A] majority of other circuits . . . have held that brief interruptions in state prison confinement for the purpose of attending proceedings in federal court do not violate the IAD, particularly where the prisoner is returned to state custody on the same or following day." and citing cases. But the Seventh Circuit Court of Appeals issued its decision in United States v. Ross on March 14, 2001, and the United States Supreme Court issued its decision in Alabama v. Bozeman on June 11, 2001, stating that "*every* prisoner's arrival in the receiving State, whether followed by a very brief stay or a very long stay in the receiving State, triggers IV(e)'s 'no return' requirement." Alabama v. Bozeman, 533 U.S. 146 at 154, 121 S.Ct. at 2085. Considering the Supreme Court's holding in Alabama v. Bozeman in United States v. Pursley, 474 F.3d 757, 763 (10th Cir. 2007), cert. denied, 552 U.S. 829, 128 S.Ct. 47, 169 L.Ed.2d 42 (2007), the Tenth Circuit stated that "Article IV(e)'s anti-shuttling provision applies *whenever* a prisoner is provided to a receiving state pursuant to a detainer. The length of the prisoner's custody by the receiving state has no bearing on the operation of the 'no return' requirement."

  The Court finds consistently with the policy, purpose and general language of the IADA and the decisions of the Courts cited above construing and applying it that when the United States has lodged a "Detainer Against Unsentenced Prisoner" with a sending State and the person against whom it is lodged is thereafter sentenced in the sending State, the "Detainer Against Unsentenced Prisoner" triggers application of the IADA unless the United States lodges a "Detainer Against Sentenced Prisoner" notifying the person of his rights under the IADA as it did in United States v. Dye, 2009 WL 2958012 (S.D.W.Va.)(District Judge Chambers). If the United States lodges a

"Detainer Against Sentenced Prisoner", it supercedes the "Detainer Against Unsentenced Prisoner", and the IADA applies. If the United States does not lodge a "Detainer Against Sentenced Prisoner" but obtains the appearance of the prisoner sentenced in the sending State with the "Detainer Against Unsentenced Prisoner" in place on the basis of a Writ of Habeas Corpus *ad Prosequendum*, the IADA applies, and the execution of the Writ bringing the person into the United States' custody is an Article IV(a) event having Article IV(e) consequences if the person is returned to the custody of the sending State.

In this matter, Defendant was in State custody with State charges pending in late-September, 2009, when the United States filed the Indictment and a Petition for the issuance of a Writ of Habeas Corpus *ad Prosequendum* and lodged its "Detainer Against Unsentenced Prisoner". The Court authorized the issuance of the Writ, and the Writ was issued. About a week later on October 2, 2009, Defendant was sentenced upon the State charges and committed to the custody of the West Virginia Division of Corrections. About a month later, the United States filed its Motion to Detain Defendant in Federal Custody citing the IADA, and thereafter, the Writ was executed, and Defendant was taken into Federal custody and brought into Court for his initial appearance/arraignment upon the charges contained in the Indictment. The IADA did not apply before October 2, 2009, when Defendant was sentenced in State Court proceedings. The United States' "Detainer Against Unsentenced Prisoner" lodged about a week earlier made the IADA applicable on October 2, 2009. The United States could have lodged a "Detainer Against Sentenced Prisoner" then giving Defendant notice of his rights under the IADA. The United States chose not to do so and proceeded then to bring Defendant into Court under Article IV(a) pursuant to the Writ of Habeas Corpus *ad Prosequendum*. Defendant was provided to the United States with the "Detainer Against Unsentenced Prisoner" in place and

therefore pursuant to it. If the United States returns Defendant to the custody of the State of West Virginia before proceedings in this matter are concluded, proceedings will be required under Article IV(e) and Article IX, § 9(1). The United States has proceeded in conformity with the IADA and is entitled to hold Defendant in its custody pending the conclusion of these proceedings. Accordingly, it is hereby **ORDERED** that the United States' Motion to Detain Defendant in Federal Custody (Document No. 10.) is **GRANTED**. Defendant shall be held in federal custody until final disposition of the charges contained in the Indictment.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record and deliver a copy to this District's United States Marshal. The Clerk is further directed to publish this opinion on the Court's website at http://www.wvsd.uscourts.gov.

ENTER: November 16, 2009.

R. Clarke VanDervort
United States Magistrate Judge

*Counsel for the United States:*

Perry D. McDaniel, Esquire
Special Assistant United States Attorney
Post Office Box 1713
Charleston, West Virginia 25326-1713
(304) 345-2200

*Counsel for Defendant:*

David R. Bungard, Esquire
Assistant Federal Public Defender
300 Virginia Street East
Charleston West Virginia 25301
(304) 347-3350