IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    CRIMINAL ACTION NO. 5:09-cr-00216

RODNEY T. HOFFMAN,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

       The Court has reviewed Defendant Rodney T. Hoffman's Motion in Limine to Exclude Other Bad Acts Evidence at Trial [Docket 62]; Motion in Limine to Prohibit the Government from Introducing Any Legal Opinion Testimony at Trial [Docket 64]; and second Motion in Limine to Exclude Other Bad Acts Evidence at Trial [Docket 66]. The Court also has reviewed the United States' Motion for the Admission of Defendant's Prior Conviction Under Environmental Laws [Docket 68]. In these motions, Defendant and the United States contest the admissibility of Defendant's prior conviction under, and involvement with, our nation's environmental laws. Defendant also seeks to preclude certain opinion testimony from the United States. For the reasons discussed below, Defendant's motions are **GRANTED**, and the motion of the United States is **DENIED**.

*I. INTRODUCTION*

Defendant Rodney T. Hoffman was indicted on September 23, 2009. His trial is currently scheduled for April 20, 2010. The two-count indictment charges Defendant with violating the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA"). Defendant is charged in both counts with violating 42 U.S.C. § 6928(d)(2)(A), which provides criminal penalties for "[a]ny person[1] who . . . knowingly treats, stores, or disposes of any hazardous waste . . . without a permit." RCRA is a cradle-to-grave regulatory scheme for toxic materials that provides "nationwide protection against the dangers of improper hazardous waste disposal." H.R. Rep. No. 94-1491, at 11 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6238, 6249. Congress passed RCRA with the objective, *inter alia*, of "assuring that hazardous waste management practices are conducted in a manner which protects human health and the environment." 42 U.S.C. § 6902(a)(4).

The indictment alleges that Defendant, along with Christopher Shawn Mills,[2] operated an electroplating business at various locations in Raleigh County, West Virginia. From December 2004 until October 2006, the indictment states that the business was operated on Robert C. Byrd Drive in Beckley, West Virginia, after having been relocated there from another location. The indictment further states that in October 2006, the business was relocated to a location on Harper Road, in or near Beckley, West Virginia. It alleges that Defendant and Mr. Mills used in the course of the electroplating business "a variety of materials, including acids, solvents, and heavy metals, and

---

[1] RCRA defines "person" as "an individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, association, State, municipality, commission, political subdivision of a State, or any interstate body and shall include each department, agency, and instrumentality of the United States." 42 U.S.C. § 6903(15).

[2] Mr. Mills is named as a defendant in a separate indictment. *See* United States v. Mills, 5:09-cr-00215 (S.D. W. Va.).

generated hazardous wastes at both the Robert C. Byrd Drive and Harper Road location," and "did not obtain a permit from the West Virginia Department of Environmental Protection to store hazardous waste at either location." (Docket 1 at 2). The United States claims that Mr. Mills had no experience with chrome plating prior to his business arrangement with Defendant, who allegedly had significant experience from his prior business ventures. According to the United States, the venture between Defendant and Mr. Mills was neither formalized between the two of them nor registered or incorporated with the State of West Virginia. The Government states that Defendant provided the necessary equipment and chemicals to start the business, for which Mr. Mills paid Defendant. Revenue was split 40% apiece, with the remaining 20% going to supplies.

As a result of the alleged activities of Defendant and Mr. Mills, in 2007 the United States Environmental Protection Agency ("EPA") conducted cleanup operations under the provisions of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*,[3] and incurred cleanup costs of $209,276.05. On February 12, 2007, the West Virginia Department of Environmental Protection ("WVDEP") transferred the contents of various containers at the Robert C. Byrd Drive location into new fifty-five gallon drums that had been shipped to that site. On May 17, 2007, an EPA employee put her hand through one of the drums, which had been corroded by the cocktail of chemicals inside of it. After an orange vapor cloud was observed emanating from the drum, the area was evacuated and emergency responders were summoned.

---

[3] CERCLA is more commonly known as the Superfund statute. The EPA describes the statute as "allow[ing] the EPA to clean up [hazardous waste] sites and to compel responsible parties to perform cleanups or reimburse the government for EPA-lead cleanups." *See* Basic Information, http://www.epa.gov/superfund/about.htm (last visited March 31, 2010).

Count One of the indictment alleges that from on or about October 2006 through on or about February 21, 2007, Defendant and Mr. Mills "knowingly stored, and caused the storage of, listed or identified hazardous waste, including sulfuric acid and chromic acid, at their [Robert C. Byrd Drive] business facility without a permit as required by RCRA." *Id.* at 2-3.  Count Two alleges the same violation, from January 2007 through on or about February 21, 2007, at the Harper Road facility.  *Id.* at 4.

The September 23, 2009, indictment is not the first time that Defendant has been criminally prosecuted for violating federal environmental laws.  In *United States v. Hoffman et al.*, 5-98-cr-00190 (S.D. W. Va.), Defendant pled guilty on March 9, 1999, to violating 33 U.S.C. § 1319(c)(2)(A) and 18 U.S.C. § 2, aiding and abetting a willful violation of the Clean Water Act.  As part of that criminal action, Defendant also executed a plea agreement for co-defendant Mabscott Plating, Inc., in his capacity as president of that entity.  However, all charges against Mabscott Plating, Inc., were later dismissed by the United States.

In May of 1998, Defendant's father, Donald Hoffman, changed the name of Mabscott Plating, Inc., to Hoffman Metal Finishing.  This renamed enterprise organization was also a defendant in *United States v. Hoffman et al.*, and pled guilty, through Donald Hoffman, to aiding and abetting a violation of the Clean Water Act on March 10, 1999.  In 2001, the EPA undertook a Superfund cleanup of the Hoffman Metal Finishing site, and claimed approximately $925,000 in cleanup costs.  Donald Hoffman was named the sole responsible party for these expenses. Defendant states that one barrel of hazardous waste at this site, from the South Side Plating business Defendant began in early 1998, was attributable to him.

## II. APPLICABLE LAW AND ARGUMENT

A. *Defendant's Motions in Limine to Exclude Other Bad Acts Evidence at Trial and the United States' Motion for the Admission of Defendant's Prior Conviction Under Environmental Laws*

1. *Defendant's 1999 Conviction and Involvement in* United States v. Hoffman et al.

Defendant and the United States contest whether Defendant's conviction and involvement in *United States v. Hoffman et al.* are admissible at trial. Rules 403, 404(b), and 609 of the Federal Rules of Evidence are applicable.

Rule 404 (b) provides, in relevant part, that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial.

Because Rule 404(b) recognizes the admissibility of prior crimes, wrongs, or acts with only the one stated exception, it is understood to be a rule of inclusion. *United States v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997) (citing *United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir. 1996)). The Fourth Circuit has articulated a four-prong test for the admissibility of prior-act evidence: (1) the prior-act evidence must be relevant to an issue other than character, such as intent; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) as required by Federal Rule of Evidence 403, its probative value must not be "substantially outweighed" by its prejudicial nature. *Queen*, 132 F.3d at 995.

Federal Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Under Rule 403, evidence may be excluded "only if the evidence is unfairly prejudicial and, even then, only if the unfair prejudice substantially outweighs the probative value of the evidence . . . . 'Evidence is unfairly prejudicial . . . when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence.'" *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (quoting *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006)).

Federal Rule of Evidence 609(a)(1) provides, in relevant part, that "[f]or the purpose of attacking the character for truthfulness of a witness . . . evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." The Fourth Circuit states

> Admission of evidence of a similar offense often does little to impeach the credibility of a testifying defendant while undoubtedly prejudicing him. The jury, despite limiting instructions, can hardly avoid drawing the inference that the past conviction suggests some probability that defendant committed the similar offense for which he is currently charged. The generally accepted view, therefore, is that evidence of similar offenses for impeachment purposes under Rule 609 should be admitted sparingly if at all.

*United States v. Sanders*, 964 F.2d 295, 297-98 (4th Cir. 1992) (quoting *United States v. Beahm*, 664 F.2d 414, 418-19 (4th Cir.1981)).

In criminal RCRA cases, ignorance of the law is not a defense. *United States v. Dee*, 912 F.2d 741, 745 (4th Cir. 1992). The Supreme Court has held that "where . . . dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation." *United States. v. Int'l Minerals & Chemical*

*Corp.*, 402 U.S. 558, 565 (1971). Rule 404(b) evidence has been used in other environmental crime cases. In *United States v. Cooper*, the defendant's lengthy history of violating the discharge permits that he was issued by the Virginia Department of Environmental Quality "demonstrat[ed] that [the defendant] did not act mistakenly or accidently but knew that he was discharging sewage and was doing so [from a lagoon] into the creek." 482 F.3d 658, 663 (4th Cir. 2007).

In its motion, the United States seeks to admit Defendant's 1999 conviction for the purposes of showing that Defendant knew that the wastes generated in a metal finishing business are generally hazardous, subject to regulations regarding the handling and disposal of waste, and could not be disposed of by simple means. The United States also argues that Defendant's conviction also will help prove that Defendant is a "person" to whom criminal liability attaches under 42 U.S.C. § 6928(d)(2)(A). The United States claims that the conviction demonstrates Defendant's knowledge of the metal finishing/electroplating business, and that Defendant was not merely an employee at the electroplating business involved in this case, but was someone capable of operating the business.

Defendant disagrees with the United States' contentions. Defendant argues that his knowledge that the materials in this case were regulated and his knowledge that they were hazardous are not at issue. Defendant does not contest that the waste materials generated by the electroplating process are considered hazardous, and points to the holding in *International Minerals & Chemical Corp.* to show that the possessor of "dangerous or deleterious devices or products or obnoxious waste materials" must be presumed to be aware of regulation. 402 U.S. at 465. Defendant distinguishes the United States' citation to *Cooper* by arguing that the factual basis for that case and the instant case are different. In *Cooper*, Defendant argues, the defendant's state environment violations were intrinsic to the federal case, as the state violations involved the same lagoon, and,

7

even if the state violations were not intrinsic, they were relevant to the jury's understanding of the defendant's awareness of the hazardous contents of the lagoon. (Docket 71 at 5). In the instant case, unlike *Cooper*, Defendant argues that the prior conviction is not intrinsic to the instant offense, and in 2004 Defendant closed another chrome plating business of his, C&R Plating, without fines or citations from the WVDEP.

Further, Defendant also argues that the 1999 conviction "has no bearing" as to whether he is a "person" under 42 U.S.C. § 6928(d)(2)(A). (Docket 71 at 2). He claims that the conviction is not relevant to the jury's determination of his role in the instant electroplating business, and that as the owner-operator, Mr. Mills was responsible for compliance with environmental regulations. Defendant states that his 1999 conviction would not assist a jury with determining whether he was actively engaged in storing hazardous wastes in this case, and that the United States should not be able to use his conviction as proof of any ownership interest, corporate office, or compliance responsibility that Defendant had in the instant electroplating business.

In its response, the United States further argues that Defendant's knowledge of hazardous waste regulation is necessary to prove that he is a "person" under § 6928(d)(2)(A), and that it is entitled to introduce evidence that rebuts Defendant's claim that Defendant was only an employee, and that Mr. Mills was the only "person" responsible for hazardous waste storage and disposal. The Government states that "it is relevant for a jury to consider [D]efendant's history with plating operations in order to understand that [D]efendant is a 'person' who is criminally liable for the improper storage of hazardous waste," and that "[i]n order for the jury to determine whether [D]efendant's knowledge and conduct justifies criminal responsibility, especially in comparison to

Mills' knowledge and conduct, the jury must know about [D]efendant's history with these exact chemicals." (Docket 74 at 7). Further, the United States argues that

> evidence of [D]efendant's prior acts in the plating business demonstrates [D]efendant's motive for the business arrangement with Mills. Defendant's [*sic*] wanted to continue in the plating business after creating hazardous wastes requiring disposal at previous locations. Therefore, he arranged to have Mills act as "owner" of the business while defendant provided the materials and experience to operate a chrome plating line. Claims by [D]efendant that he was not an "owner" or "operator" are not a legal defense, but simply an attempt to appear to distance himself from the liability which he personally knew would attach to a metal finishing business. Defendant knew the costs associated with the business, particularly with regard to proper disposal of the waste material. Defendant wanted to share in the revenue of the business and avoid any liability for the costs.

*Id.* at 7-8.

Defendant argues that the 1999 conviction fails the requirements of Rule 403, as it would be unfairly prejudicial, and that said unfair prejudice substantially outweighs any probative value. The United States distinguishes the 1999 conviction from the instant case, however. It states that while the 1999 conviction was for illegally disposing of hazardous waste by dumping it down a drain, the instant offense charges Defendant with not properly handling hazardous waste.

Defendant also moves under Rule 609(a)(1) to preclude the United States from bringing up his 1999 conviction during any cross-examination of Defendant because any probative value from the conviction would be outweighed by prejudice, especially since the 1999 conviction and the instant offense are similar.

Along with seeking to preclude admission of the 1999 conviction, Defendant seeks in his second motion in limine to exclude other bad acts at trial to preclude admission of the plea agreement that he signed on behalf of Mabscott Plating, Inc. Along with the arguments he made in his motion to exclude his 1999 conviction, Defendant also argues that the plea agreement is not

9

relevant because the United States voluntarily dismissed its case against Mabscott Plating, Inc., without any felony convictions being entered against the organization.

### 2. *The 2001 and 2007 Superfund Cleanup Costs*

Additionally, Defendant seeks in his first motion in limine to exclude other bad acts at trial to preclude admission of the 2001 and 2007 Superfund cleanup costs. Defendant argues that the 2001 cleanup costs of Hoffman Metal Finishing should be precluded because his father was the responsible party for said costs; Defendant had no role in the operations of that business; the substantial documentation from the 2001 cleanup would confuse the jury; and because of the risk of substantial prejudice. Defendant moves to preclude the 2007 cleanup costs due to substantial prejudice and because restitution was not charged in the indictment. The United States believes both sets of cleanup costs should be admitted at trial. It argues that the 2001 cleanup costs are relevant because it demonstrates that Defendant knew of "the significant cost associated with proper disposal of chrome plating operations, and that the 2001 costs show that Defendant was a "person" under § 6928(d)(2)(A) because it showed that he knew how to operate an electroplating business. Regarding the 2007 cleanup costs in the instant case, the Government states that the cost of the cleanup "demonstrates the hazardous nature of the chemicals . . . and provides context for the criminal prosecution of individuals responsible for storing hazardous waste and failing to properly dispose of the waste." (Docket 74 at 10). The United States concludes that such details "will allow the jury to hear the entire story and put [D]efendant's conduct in the proper context." *Id.*

### 3. *The May 17, 2007, Incident*

Defendant further argues that the May 17, 2007, incident should be precluded because he had no role in the WVDEP's decision to mix the assorted chemicals together in the new containers, and

that there are no allegations that the electroplating business illegally discharged hazardous substances. Further, Defendant states that this incident does not provide any insight as to whether he was an "operator" of the business. In its response to Defendant's motion, the United States states that it does not seek to introduce this incident in its case-in-chief, though it reserves the right to introduce evidence of the incident if it becomes relevant or if Defendant opens the door.

> B. *Defendant's Motion in Limine to Prohibit the Government from Introducing Any Legal Opinion Testimony at Trial*

Defendant moves in this motion to prohibit the United States from introducing any legal opinion testimony at trial.

Federal Rule of Evidence 704 provides in relevant part that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible. *United States v. McIver*, 470 F.3d 550, 561-62 (4th Cir. 2006).

Defendant anticipates that the United States will call Penny Harris, a WVDEP environmental inspector, as a witness at trial. He moves to preclude Ms. Harris "from offering any testimony or introducing the last page of her February 20, 2007, report, which sets forth her opinions that the conduct of the [D]efendant and Christopher Shawn Mills constituted nine separate violations of federal and state environmental regulations . . . . One of the noted violations states that Mills Chrome Plating and Polishing, Christopher Shawn Mills, and the defendant have stored hazardous waste without a permit in violation of W. Va. Code § 22-18-8(a)." (Docket 64 at 2). Defendant argues that while Ms. Harris can testify as to the conditions that she personally observed at the Harper Road

and Robert C. Byrd Drive locations, she cannot offer the legal opinion that the conditions at said locations constituted violations of federal and/or West Virginia environmental regulations.

The Government states that it does not intend to offer opinion testimony on the ultimate question of fact. However, it opposes the motion to the extent that it would prevent the introduction of findings made by Ms. Harris that are required elements of this case. In particular, the Government wishes to introduce evidence of alleged violation number eight, which states that Defendant and Mr. Mills "failed to comply with packaging, labeling, and marking requirements for containers of hazardous waste," *see* 40 C.F.R. § 262.34(a), since that "finding is essential for establishing the basis for requiring a permit for the storage of hazardous waste." (Docket 75 at 2-3).[4] The Government also opposes the motion if it would prevent the jury from understanding the regulation of the chrome plating business.

In his reply, Defendant agrees that the Government can limit its questions to Ms. Harris so as to prevent her from making opinion testimony on the ultimate question of fact. However, Defendant objects to the introduction of any legal opinion from Ms. Harris that 40 C.F.R. § 262.34(a) was violated, as, pursuant to 40 C.F.R. § 265.170, it is only applicable to "owners and operators." Admission of this testimony, according to Defendant, would presume that Defendant was an owner or operator of his venture with Mr. Mills.

---

[4] 40 C.F.R. § 262.34(a) provides a ninety day exemption period from RCRA permitting requirements if hazardous waste is properly packaged, labeled, and marked.

### *III. DISCUSSION*

A. *Defendant's Motion in Limine to Exclude Other Bad Acts Evidence at Trial and the United States' Motion for the Admission of Defendant's Prior Conviction Under Environmental Laws*

In the indictment, it is charged that Defendant "knowingly stored, and caused the storage of" hazardous waste without a permit. The United States argues that Defendant's 1999 conviction "demonstrat[es] his knowledge that the wastes generated in a metal finishing operation are generally hazardous and are subject to regulations regarding the handling and disposal of the wastes." (Docket 68 at 2). Although Defendant correctly distinguishes *Cooper* from the instant case,[5] the Court agrees with the United States and finds that the conviction could be probative as to whether Defendant "knowingly" stored hazardous material.[6]

However, in this case, Defendant states that he "is not contesting the fact that he was aware that waste materials generated by the chrome plating process were considered to be hazardous." (Docket 62 at 4). Given this concession by Defendant,[7] the Court finds that any probative value from the conviction is substantially outweighed by the danger of unfair prejudice. This evidence, therefore, fails the *Queen* test, and the conviction is inadmissible. However, if at trial Defendant denies that he was aware that the waste materials in question were hazardous, the probative value

---

[5] *Cooper* involved a fact pattern not present in this case. The *Cooper* defendant's prior state environmental permit violations occurred at the same site that was the basis for his criminal case, while Defendant's 1999 conviction occurred at a location different from the ones in the instant case.

[6] As *International Minerals & Chemical Corp.* and *Dee* provide, regulation of hazardous materials can be presumed. Defendant's 1999 conviction would not be admissible to show that he knew the hazardous materials in the instant case were the subject of RCRA regulation.

[7] The Court observes that, as noted by the United States in its response to Defendant's motions, Defendant "has not agreed to a stipulation nor provided any other arrangement that is admissible at trial that would eliminate the requirement of the United States to prove this element of the crime." (Docket 74 at 6).

of his 1999 conviction is not substantially outweighed by the danger of unfair prejudice, and said conviction could be admissible to show that he knew that the materials in this case were hazardous.

Whether a conviction can be admitted to show that a defendant is a "person" under RCRA is a question of first impression. The Court agrees with Defendant, and finds that his 1999 conviction is not admissible for this purpose. The undersigned finds that the conviction is not relevant as to whether Defendant is a "person" under RCRA, and is not necessary to prove the element that Defendant is a "person." As mentioned in footnote 1, *supra*, RCRA defines "person" as, *inter alia*, "an individual." 42 U.S.C. § 6903(15). It cannot be disputed that Defendant is a "person" under § 6928(d)(2)(A), as he is an individual. Even if the conviction were relevant as to whether Defendant is a "person" under RCRA, any such probative value would be outweighed by the danger of substantial prejudice. As it is not relevant, not necessary, and brings the risk of substantial prejudice, the Court finds that Defendant's 1999 conviction fails the *Queen* test as to whether Defendant is a "person" under RCRA, and is therefore inadmissible.

The United States argues that Defendant's history in the electroplating business is relevant as to Defendant's involvement, conduct, and motive in his enterprise with Mr. Mills. The United States is free to introduce evidence at trial regarding Defendant's lengthy history in the electroplating industry in order to make these points. However, it may not introduce his 1999 conviction. While the United States argues that the conviction goes to Defendant's motive for arguing that he was not owner/operator of the venture with Mr. Mills, it does not need the conviction to dispute at trial any argument made by Defendant that RCRA only imposes criminal liability on owner-operators. Moreover, although the United States distinguishes the 1999 conviction and the

instant offense, the two offenses, which both involve hazardous waste, are similar enough so as to create the risk of substantial prejudice.

The undersigned similarly finds that Defendant's 1999 conviction is inadmissible for purposes of cross-examination under Rule 609(a)(1). The Court cannot fathom what the probative value of the conviction would be unless Defendant denies knowledge that the waste was hazardous or denies ever running an electroplating/metal finishing business. Therefore, the Court finds that the conviction shall be excluded from cross-examination unless Defendant, in direct examination, testifies as to some fact that gives the conviction probative value.

Regarding the 2001 cleanup costs from Hoffman Metal Finishing, the Court finds that those costs are inadmissible due to their lack of relevance—Defendant's father was deemed the sole responsible party—and because evidence of such costs would create the danger of substantial prejudice, even if those cleanup costs might demonstrate that Defendant was aware of the costs associated with the proper disposal of chrome plating operations. Contrary to the Government's dubious assertions, the undersigned finds that cleanup costs for which Defendant's father was deemed the only responsible party bear no relevance whatsoever as to whether Defendant is a "person" under RCRA.

Similarly, the 2007 cleanup costs from the instant case are also inadmissible. As Defendant correctly notes, restitution is not charged in the indictment. Moreover, the Court finds that while the 2007 cleanup costs might provide some context to the jury, the risk of substantial prejudice would be too great. The May 17, 2007, incident is also inadmissible. It is not relevant as to whether Defendant knowingly stored hazardous waste without a permit, and, regardless, word of an orange

vapor cloud that forced an evacuation of the premises would substantially prejudice Defendant with the jury.

Therefore, for the reasons stated above, and under the conditions provided above, Defendant's first motion in limine to exclude other bad acts evidence at trial is **GRANTED**, and the United States' motion for the admission of defendant's prior conviction under environmental laws is **DENIED**.

> B.   *Defendant's Second Motion in Limine to Exclude Other Bad Acts Evidence at Trial*

The Court finds that the plea agreement Defendant signed on behalf of Mabscott Plating, Inc., is not relevant, and therefore, inadmissible. The Court notes that the charges against Mabscott Plating, Inc., which were the subject of that plea agreement, were voluntarily dismissed by the United States. The plea agreement simply has no probative value with respect to the proof of the allegations in the instant case. Defendant's second motion in limine to exclude other bad acts evidence at trial is, therefore, **GRANTED**.

> C.   *Defendant's Motion in Limine to Prohibit the Government from Introducing Any Legal Opinion Testimony at Trial*

As cases such as *McIver* have held, Federal Rule of Evidence 704 does not allow for opinion testimony that "states a legal standard or draws a legal conclusion by applying law to the facts." *McIver*, 470 F3d. at 562. Ms. Harris and other witnesses of the United States are free to testify as to their observations and opinions. However, the United States and its witnesses must be careful that their questions and answers, respectively, do not lead to forbidden opinion testimony that Defendant

violated federal and/or West Virginia environmental regulations.[8] Defendant's motion is therefore **GRANTED**.

### *IV. CONCLUSION*

For the reasons stated above, the undersigned **ORDERS** Defendant Rodney T. Hoffman's Motion in Limine to Exclude Other Bad Acts Evidence at Trial [Docket 62], Motion in Limine to Prohibit the Government from Introducing Any Legal Opinion Testimony at Trial [Docket 64], and second Motion in Limine to Exclude Other Bad Acts Evidence at Trial [Docket 66] be **GRANTED**. The undersigned further **ORDERS** the United States' Motion for the Admission of Defendant's Prior Conviction Under Environmental Laws [Docket 68] be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to Defendant and counsel, and the United States Attorney.

ENTER: April 5, 2010

*[signature: Irene C. Berger]*
IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[8] Contrary to Defendant's assertions, testimony regarding violation number eight—that Defendant and Mr. Mills "failed to comply with packaging, labeling, and marking requirements for containers of hazardous waste"—is admissible. Testimony as to this alleged violation is part and parcel to the United States' case. Any concerns that Defendant has regarding such testimony can be addressed by a limiting instruction, if requested.